*fH*

**RECEIVED**

AUG 1 1 2014
*8-11-14*
THOMAS G BRUTON
CLERK, U S DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN M. GORE,                         )
                                       )
        Petitioner,                    )
                                       )
vs.                                    )
                                       )        1:14-cv-06154
University of Illinois, Document    )           Judge James B. Zagel
No. 4656463, et. all.                  )        Magistrate Judge Sidney I. Schenkier
        Respondents,                   )

**VERIFIED COMPLAINT / MOTION FOR ORDER TO COMPEL**

COMES NOW the Petitioner, Kevin M. Gore, Pro Se., and moves this Court for an immediate injunction against the University of Illinois, Respondent, in order to obtain his own official Academic Records for admission to another University, and in support thereof states the following:

**Parties:**

1.      Petitioner KEVIN M. GORE is an individual who requested his own Academic records ('Transcripts'), paid in full the service fee for the costs to produce the Transcripts and is being denied access to obtain his official records in the Northern District of Illinois after he paid in full the fees . Petitioner is a disadvantaged minority, currently in a re-entry program formulated under 18 U.S.C. § 3624(c)(1).

2.      The Respondent is the University of Illinois, who has improperly placed a "hold" on Petitioner's prepaid Transcript request and does not allow their records department to release Petitioner's academic records required for admission into another University.

1

3. Document No. 4656463 is a result of Order No. 4275929, which was Petitioner's order of his transcript from his attendance of over 15 years, to be to delivered to another institution's admissions department for the purpose of admission to a degree seeking vocational rehabilitation program as a result of programming established for Petitioner's reentry to society.

## JURISDICTION:

4.      This court has jurisdiction over these civil proceedings as it directly impacts programming in which Petitioner's rehabilitation has begun pursuant to 18 U.S.C. § 3624(c)(1).

5.      This Court has jurisdiction over the Respondent as it is a corporation that operates in and individuals who provided educational services within the Northern District of Illinois.

6.      This Court has jurisdiction over the Respondent as it is a covered institution in violation of 34 C.F.R. § 601, which states: "A covered institution that participates in a preferred lender arrangement must comply with the code of conduct requirements including...[they must not] assign, the borrower's loan to a particular lender."

7.      This Court has jurisdiction over the Respondent as it is mandated by Congress in 72 F.R.. § 211-61972 , who reviewed and rejected Commenters' requests to grant Universities rights to withhold transcripts from former borrowers, who commented "These schools acknowledged that the Department [of Education] has collection methods unavailable to the schools, but noted that schools have collection methods,such as withholding transcripts and placing administrative holds on services, that the Department  [of Education] does not have."

8.      This Court has jurisdiction over the release of the educational records pursuant to 20 U.S.C. § 1232(g)(5), which states "nothing in this section shall be construed to prohibit State and local

2

educational officials from having access to student or other records which may be necessary in connection with the audit and evaluation of any federally or State supported education program or in connection with the enforcement of the Federal legal requirements which relate to any such program."

9.      This Court has jurisdiction over any loan deferment as it relates to 34 C.F.R. § 685.204(e)(1) and has judicial oversight to determine that Petitioner was a direct loan borrower and whose eligibility for a deferment during any period in which an authorized official of the borrower's rehabilitation training program certifies that the borrower is pursuing an eligible rehabilitation training program for individuals with disabilities in accordance with any 'State Agency with responsibility for vocational rehabilitation program.'

10.      "An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia." 5 U.S.C. § 552a(g)(5). "Whenever any agency . . . refuses to comply with an individual request under subsection (d)(1) of this section [the individual may bring a civil action against the agency]." 5 U.S.C. § 552a(g)(1)(B). Courts can also enjoin the agency from withholding records and order their production to the individual. See 5 U.S.C. § 552a(g)(3)(A).

**PROPER VENUE:**

11.      This Court is the proper venue for this civil injunction matter as this action arises out of conduct in bad faith of the Respondent during unlawfully withholding his own academic records, the property of the Petitioner without proper authority. The Respondent willfully and intentionally participate in a scheme to deprive Petitioner of his rights to obtain his academic record for admission to another

3

University's Degree program. Further, all agency records are regulated and governed by the Code of

Federal Regulations. Thus representing Congress' intention to protect student's rights to obtain their

academic records.

12.     This Court is the proper venue because 20 U.S.C. § 1232(g)(5) does not preclude the

Respondent, from its obligation to furnish the transcripts (student or other records) to another local

educational official, once officially requested by the student upon request from the other institution's local

educational official, which is necessary for evaluation of another federally or State supported education

program.

## VERIFIED FACTS:

13.     Kevin Gore, Petitioner, attended University of Illinois in the 1990's. He completed only

several semesters at the University and did not obtain any degree during his attendance. Petitioner is

currently a disadvantaged minority, currently in a re-entry program formulated under 18 U.S.C. §

3624(c)(1). In June of 2014, Petitioner applied to attend Loyola University in order to fulfill his re-entry

obligations under the aforereferenced program. Loyola University has requested his transcripts from UIC

as a condition of admission to their adult continuing degree program. On July 9, 2014 at 2:16 p.m.,

Petitioner went online, requested and purchased an official copy of his transcripts to be sent to Loyola

University for admission to an Adult Continuing Degree Program. University of Illinois ('UIC'),

Respondent accepted the request and assigned the transaction Order Number 4275929. On July 10,

2014, the report generated the transcript PDF file, Document Number 4656463, was created. For

nearly one month, the transcript was not delivered to Loyola University as contracted online. When

Petitioner contacted University of Illinois Records Department ('Records Dept.'), he was told that the

4

document was on hold and that they had no information as there was no outstanding balance on Petitioner's old Student Account. Petitioner called the Records Dept. on multiple occasions and was never explained why the 'hold' was never released, which resulted in the Records Department's failure to deliver the transcript to Loyola as ordered. On July 10, 2014, Petitioner started sending email requests to UIC without any response, in addition to numerous phone calls that went unreturned. After speaking with Sharyl in UIC records for the third time, she provided him the name Tina who was the manager in the Financial Services Department. Sharyl told Petitioner that she would contact with Tina and the supervisors to get the hold released. In August of 2014, Petitioner received a voice message from Tina Ramey a manager of the financial Services Department of UIC. It wasn't until August 5, 2014, that Petitioner was informed by making several calls to the Financial Services Department that there was a balance due on his old Student Account, without any clarification of what the balance was from. On August 7, 2014, Loyola University gave Petitioner a deadline of August 12, 2014 to deliver his UIC official transcript by email. On August 8, 2014, during his first conversation with Tina Ramey, manager of the Financial Services Department, he was informed that University of Illinois had recalled a MAP Grant and that he owed UIC money. Only after Petitioner paid that balance in full, will UIC release his academic records (transcripts). Petitioner had contacted University Counsel several times over the course of the week of August 4, 2014 in an attempt to resolve his issues before having to seek Judicial Oversight.

At no time was Petitioner given proper notice that his MAP Grant was recalled or that he owed money to UIC. Now almost 15 years later, UIC is making demands outside of his capability to perform, tantamount to extortion as its beyond his ability to pay. Further, UIC never gave an explanation as to why his MAP Grant was recalled, outside of their demand to pay in full to release his transcript.

5

## THE PETITIONER IS SUFFERING IRREPARABLE HARM, AND THUS THERE IS NO

## ADEQUATE REMEDY AT LAW:

14.    The pursuit of education is an important part of the reentry program for Petitioner. It is a fundamental and integral part of his his programming. Without which would cause his program to be significantly less effective. Petitioner will most likely be unable to complete his degree at a later date because he will not be afforded the time in which he will be able to do so in lieu of making a living. He will be irreparably harmed by not finally obtaining a degree, in which he started at the Respondent's institution in the 1990's. Further, he had paid significant money to the Respondent in those earlier years he attended and their withholding of his transcripts would cause the tuitions he paid in those years to be wasted.

## THE BALANCE OF HARDSHIPS FAVORS AN ORDER TO COMPEL:

15.    The irreparable harm that the Petitioner will suffer if the order to compel is not granted is far greater than the harm that defendant will suffer if the preliminary injunction is granted. As set forth above, there is a substantial issue as it relates to the re-entry program formulated under 18 U.S.C. § 3624(c)(1).

16.    On the other hand, the education portion of the Reentry Program will not have any negative impact on the Respondent, as the Program exemplifies Congressional intent.

## CONCLUSION:

For the foregoing reasons, plaintiff respectfully requests that the Court issue an order to compel Respondent UIC to release Petitioner's transcripts to Loyola University, which will allow its officers, board members, employees, agents, or volunteers to provide Petitioner's School Records (Transcripts), so he can pursue admission in FALL I at Loyola University.

DATED: August 11, 2014

Respectfully submitted:

_____

Kevin Gore, Petitioner

#02938-093

105 S. Ashland Ave

Chicago, IL 60607

7

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Verified Complaint / Motion for Order to Compel was delivered on the same day by hand delivery and one copy sent via US Mail, prepaid, with correct postage to Respond at:

Office of University Counsel

1737 W. Polk St. Suite 405

Chicago, IL 60612

312-596-7762

_____

Kevin Gore, Petitioner

Dated: 8/11/2014